FILED
2016 Jun-28  PM 02:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| TOMMY TUCKER, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 2:15-CV-00629-VEH** |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER, SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Tommy Tucker ("Mr. Tucker") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. Mr. Tucker seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for Disability Insurance Benefits ("DIB"). Mr. Tucker timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

Mr. Tucker was 49 years old at the time of his hearing before the Administrative Law Judge ("ALJ"). (Tr. 29, 133 ). He has completed the 9th grade. (Tr.153). His past work experience includes employment as a tree trimmer and

supervisor of tree trimming. (Tr. 49, 153). Mr. Tucker maintains that he became disabled on March 1, 2008, due to a fall from a tree in the course of his employment as a tree trimmer. (Tr. 149, 217-19).

On February 14, 2012, Mr. Tucker protectively filed a Title II application for a period of disability and DIB. (Tr. 54). On May 3, 2012, the Commissioner initially denied this claim. (Tr. 63). Mr. Tucker timely filed a written request for a hearing on May 15, 2012. (Tr. 73). The ALJ conducted a hearing on the matter on June 6, 2013. (Tr. 21). On August 15, 2013, she issued her opinion concluding Mr. Tucker was not disabled and denying him benefits. (Tr. 29). Mr. Tucker timely petitioned the Appeals Council to review the decision on October 15, 2013. (Tr. 16-17). On February 26, 2015, the Appeals Council denied review. (Tr. 1-6). Accordingly, the ALJ's denial of Mr. Tucker's DIB claim became the Commissioner's final decision.

Mr. Tucker filed a Complaint with this court on April 14, 2015, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on September 24, 2015. (Doc. 9). Mr. Tucker filed a supporting brief (Doc. 12) on November 2, 2015, and the Commissioner responded with her own (Doc. 13) on December 1, 2015. With the parties having fully briefed the matter, the court has carefully considered the record and affirms the decision of the Commissioner.

2

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

3

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[1] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether the claimant has a severe impairment;

---

[1] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of June 16, 2016.

4

(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.     Mr. Tucker met the insured status requirements of the Social Security Act through December 31, 2012.

2.     He had not engaged in substantial gainful activity since March 1, 2008, the alleged disability onset date.

3.      He had the following severe impairments: osteoarthritis, status post right foot fracture; asthma; and morbid obesity (20 CFR 404.1520(c)).

4.      He did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.      He had the residual functioning capacity ("RFC") to perform a range of sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift and carry ten pounds occasionally and less than ten pounds frequently; sit for six hours in an eight-hour day; stand and walk for two hours in an eight-hour day; can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs; can never kneel or crawl; can occasionally balance, stoop, and crouch; should avoid concentrated exposure to temperature extremes, humidity, vibration; should avoid even moderate exposure to environmental irritants such as dust, fumes, odors, and gases, poorly ventilated areas and workplace hazards such as dangerous machines and unprotected heights.

6.      He was unable to perform any past relevant work.

7.      He was 45 years old, which is defined as a younger individual age 45-49, on the date last insured.

8.      He had a limited education and was able to communicate in English.

9.      Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that he was "not disabled," whether or not he had transferable job skills.

10.     Considering his age, education, work experience, and residual functioning capacity, there were sedentary, unskilled jobs that existed in significant numbers in the national economy that he

could perform, such as a general office clerk, an order clerk, and production positions.

11.   Mr. Tucker had not been under a disability, as defined in the Social Security Act, from December 31, 2012, through the date of the disability decision.

(Tr. 23-29).

## <u>ANALYSIS</u>

## I.   **Introduction**

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[2] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citing *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977)).

Mr. Tucker urges the court to reverse the Commissioner's decision to deny his benefits, claiming that the ALJ committed reversible error by not applying the proper

---

[2]   *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

legal standards and not supporting her decision with substantial evidence. (Doc. 12 at 7). More specifically, Mr. Tucker argues that the ALJ failed to correctly address his venous insufficiency[3] as diagnosed by Jimmy Mali, M.D. ("Dr. Mali") to be moderate to severe after performing a consultative examination in March 2012. (Doc. 12 at 7). Mr. Tucker secondarily contends that the medical record was not sufficiently developed, and that "additional medical testing . . . was needed to make an informed decision." *Id.* The court rejects these grounds for appeal, and instead finds that the ALJ applied the proper legal standards and that the Commissioner's decision was supported by substantial evidence.

## II. Any Error Committed by the ALJ Concerning Mr. Tucker's Venous Insufficiency Was Harmless.

On March 17, 2012, Dr. Mali conducted a consultative examination of Mr. Tucker at the request of the Social Security Administration. (Tr. 223-28). In the post-examination written report provided by Dr. Mali, he opined multiple times that Mr. Tucker suffered from moderate to severe venous insufficiency.[4] (*See* Tr. 226

---

[3] An "inadequacy of the venous [vein] valves and impairment of [blood] return from the lower limbs." "*Insufficiency, venous*", *Dorland's Illustrated Medical Dictionary* 945 (32nd ed. 2012).

[4] Relying upon the U.S. National Library of Medicine as a resource, Mr. Tucker describes venous insufficiency as "'a condition in which the veins have problems sending blood from the legs back to the heart.' Symptoms include pain worsened with standing and swelling of the legs, among others." (Doc. 12 at 9 n.2).

("Noticeable bilateral moderate to severe venous insufficiency noted."); Tr. 227 ("Venous insufficiency.  The claimant with fairly marked bilateral lower extremity venous insufficiency."); Tr. 228 ("Venous insufficiency.  The claimant with moderate to severe venous insufficiency of the bilateral lower extremities.")); (*see also* Tr. 225 ("The claimant reported a longstanding history of bilateral lower extremity swelling. He reported that his swelling increased toward the end of the day.")). The ALJ assigned "some weight" to Dr. Mali's findings determining them to be "somewhat consistent with the medical evidence." (Tr. 26).

In addition to the consultative examination conducted by Dr. Mali, Mr. Tucker's medical file was reviewed by Robert Mogul, M.D. ("Dr. Mogul"), a State agency physician. (Tr. 26). Based upon his paper review, Dr. Mogul completed a physical residual functional capacity assessment of Mr. Tucker on July 18, 2012. (Tr. 238-244). Within this report, Dr. Mogul specifically noted Mr. Tucker's moderate to severe venous insufficiency diagnosed by Dr. Mali. (Tr. 240). The ALJ assigned "significant weight" to Dr. Mogul's opinion as "consistent with the objective medical evidence." (Tr. 26).

Mr. Tucker maintains that the ALJ committed legal error when she omitted any discussion of Dr. Mali's diagnosis of Mr. Tucker's venous insufficiency as a severe (or non-severe) impairment from her disability decision. (Doc. 12 at 7-11); (*see also*

9

Tr. 23 (listing Mr. Tucker's severe impairments without including venous insufficiency)). Instead, the ALJ only expressly mentioned this condition in her summary of Dr. Mali's medical findings. (*See* Tr. 26 ("He had 'fairly significant venous insufficiency.'")).

Mr. Tucker cites to several binding and persuasive authorities in support of his position that reversible error occurred. The binding opinions include *Brady v. Heckler*, 724 F.2d 914 (11th Cir. 1984), *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986), and *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985). (Doc. 12 at 8). The persuasive decisions are *Williams v. Barnhart*, 186 F. Supp. 2d 1192 (M.D. Ala. 2002) and *Ashford v. Barnhart*, 347 F. Supp. 2d 1189 (M.D. Ala. 2004). The court discusses these authorities in more detail below.

In *McDaniel*, the ALJ classified none of the claimant's impairments as severe and terminated the process at step two. In reversing the district court that had affirmed the ALJ's denial of disability, the *McDaniel* court discussed the *Brady* decision (another step two appeal) and provided clarification concerning step two of the disability evaluation:

> In *Brady* we set out to define "severe impairment" within the meaning of § 416.920(c) by contrasting it to nonsevere impairments. We stated that a claimant's

> impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

724 F.2d at 920. We concluded that, under this newly articulated standard, the Secretary's finding that *Brady* was not suffering from a severe impairment was not supported by substantial evidence. From representations by counsel during argument on this appeal, it appears that uncertainty persists about the *Brady* analysis of step two. We attempt here to clarify.

> At step two of § 404.1520 and § 416.920 a claimant's impairment is determined to be either severe or not severe. <u>Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild</u>. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. <u>Claimant need show only that her impairment is not so slight and its effect is not so minimal</u>.

*McDaniel*, 800 F.2d at 1031 (emphasis added).

The *McDaniel* panel further explained:

> In his September 25, 1984, decision, the ALJ did not cite *Brady*, which had been decided February 9, 1984, nor did he quote or paraphrase the *Brady* standard. Taken as a whole, the ALJ's findings cannot be fairly construed as an application of *Brady*. Although the ALJ made a careful consideration of the record, he appears to have required McDaniel to meet a higher burden at step two than *Brady* requires.

*McDaniel*, 800 F.2d at 1031 (footnote omitted).

The other binding opinions relied upon by Mr. Tucker similarly involve

disability denials that end at step two. *See Hillsman*, 804 F.2d at 1180 ("The Administrative Law Judge who reviewed her case determined that appellant did not have a 'severe impairment' as required by 20 C.F.R. § 404.1520(c) (1986)."); *Flynn*, 768 F.2d at 1275 ("Had the Administrative Law Judge had benefit of our opinion in *Brady*, we believe he would of necessity have concluded that the threshold showing of a 'severe impairment' was made."). Because Mr. Tucker's disability claim proceeded past step two, his case is significantly different procedurally than these binding cases upon which he relies.

Mr. Tucker's persuasive authorities from the Middle District of Alabama, however, are more closely on point. For example, in *Williams*, the ALJ proceeded past step two with <u>some</u> impairments, but did not address the severity of several <u>other</u> conditions that were substantiated by the claimant's medical record. In finding error and remanding, the district court explained:

> Notwithstanding the diagnoses and objective evidence supporting the claimant's other impairments, <u>the ALJ made no express determination as to the severity of the claimant's coronary disease, asthma, glaucoma, or obesity. Nor does the decision reveal the extent to which the ALJ evaluated those symptoms or impairments beyond step two of the sequential evaluation process.</u> Accordingly, the ALJ's failure to consider or even address these impairments as a part of his determination of severity was reversible error.

*Williams*, 186 F. Supp. 2d at 1198 (emphasis added).

12

*Ashford* involved an appeal of a disability reevaluation in which the claimant was determined no longer to be disabled. 347 F. Supp. 2d at 1190. The ALJ found the claimant to have the severe impairments of "schizoaffective disorder, provisional; borderline intellectual functioning, degenerative joint disease, hypertension, and obesity, *id.* at 1192, but did not discuss the severity of her documented condition of bipolar disorder and only mentioned it as an alleged impairment. *Id.* at 1194. In reversing and remanding, the district court reasoned concerning this assignment of error:

> At the very least, the ALJ should have explained how (and why) the weight of the evidence would not support a finding that bipolar disorder was a severe impairment, especially <u>since a number of physicians noted either that Ashford manifested the disorder in its active state or as part of her medical history</u>. His failure to do so constitutes reversible error.

*Ashford*, 347 F. Supp. 2d at 1194 (emphasis added).

Here, the record is comparable to *Williams* and *Ashford*, as Mr. Tucker's moderate to severe venous insufficiency is a documented condition confirmed by Drs. Mali and Mogul that the ALJ mentions in summarizing Dr. Mali's findings, but never discusses as part of her step two analysis.

In responding to these cases, the Commissioner cites to *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987), and suggests that no reversible error has occurred because

13

the ALJ found other severe impairments and proceeded past step two. (Doc. 13 at 12) More specifically, the Commissioner indicates that, under *Jamison*, "the finding of *any* severe impairment . . . is enough to satisfy the requirement of step two." 814 F.2d at 588 (emphasis added) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).[5] Because *Jamison* was not a step two challenge, the foregoing language constitutes dicta. However, this court can rely upon dicta as persuasive authority. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 747 (11th Cir. 2010) (confirming that a court "may consider dicta for its persuasive value").

The Commissioner also relies on the unpublished decision of *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, in which a mistake made by the ALJ at step two was determined to be harmless error:[6]

> Substantial evidence does not support the ALJ's finding, at step two, that Delia's mental impairments were not severe because the medical evidence showed that these impairments did cause restrictions in daily living, social functioning, and maintaining concentration, persistence, or pace. However, the ALJ deemed several of Delia's other medical impairments to be severe and therefore continued on in the sequential inquiry. The ALJ considered Delia's mental impairments at

---

[5] This full sentence from *Jamison* reads:  "This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." 814 F.2d at 588.

[6] Unpublished decisions by the Eleventh Circuit are not binding on this court, but may be adopted as persuasive authority.

steps three, four, and five. <u>Because the ALJ gave full consideration to the consequences of Delia's mental impairments on his ability to work at later stages of the analysis, the error at step two was harmless and is not cause for reversal</u>. *See Reeves v. Heckler*, 734 F.2d 519, 524 (11th Cir.1984) (rejecting a challenge to an ALJ's conclusion as harmless error when the ALJ had considered the relevant evidence in making the disability determination).

*Delia*, 433 F. App'x at 887 (emphasis added).

The Commissioner additionally relies upon *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823 (11th Cir. 2010), another harmless error case:

> Here, the ALJ determined that the only severe impairment Heatly suffered from was status-post cervical fusion, despite that Heatly separately had been diagnosed with chronic back pain. Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that Heatly had a severe impairment: and that finding is all that step two requires. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1991) (applying the harmless error doctrine to social security cases); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir.1987) ("the finding of *any* severe impairment ... whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two) (emphasis added).
>
> <u>Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that it has considered all of the claimant's impairments, whether severe or not, in combination.</u> *See id.*; *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984) (explaining that the ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments"). Here, that the ALJ did consider all of Heatly's impairments (whether severe or not) in combination is clear. The ALJ discussed in detail Heatly's testimony and medical history, which included Heatly's pain complaints, his

limitations due to pain, and the diagnoses he received related to his pain. *See Jones v. HHS*, 941 F.2d 1529, 1533 (11th Cir. 1991) (a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of such findings).

*Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x at 824-25 (footnotes omitted) (emphasis added).

The Commissioner further argues that, because the ALJ indicated that her RFC determination must include consideration of both severe and non-severe impairments (Tr. 22), "[t]his is sufficient to show that, at the remaining steps of the sequential evaluation process, the ALJ considered the combined effect of Plaintiff's impairments on Plaintiff's ability to work." (Doc. 13 at 13 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) ("The ALJ's determination constitutes evidence that he considered the combined effects of Wilson's impairments.")).

Against this backdrop, the court is persuaded to follow the Commissioner's collection of cases in the context of this case and conclude that any step two error committed by the ALJ concerning Mr. Tucker's diagnosis of venous insufficiency was harmless. In particular, Mr. Tucker has not shown how failing to specifically identify venous insufficiency as a severe condition at step two (or as a non-severe condition later in the process) resulted in the ALJ's arriving at a materially less restrictive RFC determination for him. *Cf. Moore v. Barnhart*, 405 F.3d 1208, 1213

16

n.6 (11th Cir. 2005) ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she has varus leg instability and shoulder separation."); *id.* ("However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard. (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986))). Importantly, the ALJ primarily relied upon Dr. Mogul's physical capacity assessment when formulating Mr. Tucker's RFC and Dr. Mogul's opinion that Mr. Tucker could perform a limited range of light work expressly included moderate to severe venous insufficiency as a relevant underlying impairment.[7] (Tr. 240). Therefore, the ALJ's formulation of Mr. Tucker's RFC does account for his venous insufficiency.

Additionally, the ALJ ultimately determined Mr. Tucker's RFC to be sedentary

---

[7] The Regulations describe light work as:

[L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

with restrictions after partially crediting Mr. Tucker's subjective allegations:[8] "The undersigned finds that the claimant's foot and knee pain would reasonably limit him to sedentary work as heavy lifting and carrying may exacerbate his pain." (Tr. 27). Thus, while the ALJ may not have expressly used the term venous insufficiency, her RFC decision undoubtedly factored in Mr. Tucker's complaints about the pain he was experiencing in his legs. Mr. Tucker relatedly has not articulated how a "corrected" or more apparent consideration of venous insufficiency on remand would result in any material modification of his RFC. Consequently, any step two error committed by the ALJ does not warrant a remand as the totality of the record confirms the overall absence of any appreciable compromise of Mr. Tucker's substantial rights. *See* FED. R. CIV. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

## III.   A New Medical Examination Was Not Required.

Mr. Tucker also assigns error because the ALJ did not order additional medical testing. (Doc. 12 at 7). More specifically, Mr. Tucker claims that it was a reversible

---

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

20 C.F.R. § 404.1567(a).

error not to develop the record further based on Dr. Mali's observation that Mr. Tucker "would benefit . . . [from] hav[ing] EMG nerve conduction studies of his right foot, given his history of trauma and surgery to rule out any possible nerve injury that could have occurred." (Tr. 228). However, the ALJ assessed Mr. Tucker's medical history, including opinions from several medical professionals, as well as Mr. Tucker's own, subjective assessment of his capabilities in deciding Mr. Tucker's RFC. This court finds that due to the relative simplicity of Mr. Tucker's medical record, additional medical testing was not needed and, thus, no reversible error occurred. *Cf. Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) ("[W]here the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.").

The ALJ has a duty to sufficiently develop the record when making her RFC calculation, including "when the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [the] claim." 20 C.F.R § 404.1519a(b); *see Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) ("It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."). Whether the ALJ is obligated to order an additional medical examination depends on the circumstances

of each case and the caliber of the evidence already available. *See* 20 C.F.R §

404.1545(a)(3) ("We will assess your [RFC] based on all of the relevant medical and

other evidence").

Additionally, an ALJ is ultimately responsible for the RFC, which is an

administrative finding, not a medical evaluation. *See* 20 C.F.R § 404.1527(e)(2)

("Although we consider opinions from medical sources on issues such as . . . your

[RFC] . . . the final responsibility for deciding these issues is reserved to the

Commissioner."). Although medical evaluations about a claimant's RFC are often

valuable, they are not required when making an RFC finding. *See Langley v. Astrue*,

777 F. Supp. 2d 1250, 1258 (N.D. Ala. 2011) ("[T]he court concludes that the law of

this circuit does not required [sic] an RFC from a physician."); *see also Green v.*

*Social Security Admin.* 223 F. App'x 915, 922-24 (11th Cir. 2007) (ruling that an

ALJ's RFC can be substantially supported when it disregards the only medical

evaluation made by a doctor); *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir.

2014) ("The ALJ discredited [claimant's subjective complaints of pain] by explaining

that this pain had not require[d] routine or consistent treatment, and [the claimant]

often went for months or years between complaining of this pain to his physicians.")

(citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005))).

The Eleventh Circuit has afforded significant latitude to the ALJ in determining whether additional medical evidence is needed to make an informed RFC determination: the ALJ "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citation omitted))). The ALJ is thus expected to interpret the totality of the record, including any available medical information, and may use her judgment as to whether an additional medical examination is required.

It is clear from this record that the ALJ did not engage in reversible error here because she sufficiently looked at the totality of the evidence in making her RFC determination. The ALJ relied heavily upon Dr. Mogul's physical capacities assessment of Mr. Tucker. Dr. Mogul reviewed Mr. Tucker's medical record, including his right foot impairment and determined that Mr. Tucker was capable of performing a reduced range of light work. (Tr. 238-44). The ALJ gave partial credence to Mr. Tucker's complaints of right foot pain in further reducing his vocational capabilities to sedentary work. (Tr. 24, 27). In addition, the ALJ took note of Mr. Tucker's assessment of his own abilities (such as washing dishes, bathing, mopping, vacuuming, driving, and managing personal care as reported to Dr. Mali)

21

in discounting the degree of debilitating pain and other subjective symptoms claimed by Mr. Tucker elsewhere in the record. (Tr. 27, 225); (*see also* Tr. 167 (describing daily activities as "go to store, pick up around the house, ride around in my truck, go to my mother's."); (Tr. 169 (listing household chores including laundry, picking up around the house, picking up trash, and riding on lawn mower); (Tr. 171 (listing fishing as an interest done "a few times")). The fact that Mr. Tucker's pain symptoms were alleviated by over-the-counter pain medications also indicated that his symptoms were not as debilitating as he made out. (Tr. 25); (*see also* Tr. 42 ("Aleve helps ease [the pain] up a little bit. It don't stop it, but it helps, the Aleve eases it up.")).

An ALJ must consider a claimant's subjective reports of symptoms. If the ALJ decides not to fully credit a claimant's subjective testimony, "he must articulate explicit and adequate reasons for doing so." *Holt v. Sullivan*, 921 F.2d 1221,1223 (11th Cir. 1991). Further, these reasons must "take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Here, the ALJ articulated her reasons, including the important fact that Mr. Tucker self-reported being independent with a large number of daily activities as described above. Dr. Mogul's assessment, Mr. Tucker's daily activities and his own testimony that use of over-the-counter pain medication eases some of his symptoms provide substantial

22

evidence to support the ALJ's conclusion that Mr. Tucker's condition was not disabling to the extent that he was unable to perform a reduced range of sedentary work, and further development of the record through additional testing by another consultative examiner was unnecessary under the circumstances of this case.

## CONCLUSION

Based upon the its evaluation of the administrative record and the parties' submissions, the court finds that the decision of the Commissioner is due to be affirmed. The court will enter a final judgment order consistent with this memorandum opinion.

**DONE** and **ORDERED** this 28th day of June, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge